UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA R., *Plaintiff*, v. COMMISSIONER OF SOCIAL SECURITY, *Defendant*. | : | No. 3:25-cv-1122-MPS |

**RECOMMENDED RULING**

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. The case was referred to the undersigned for a recommended ruling. ECF 17. For the reasons below, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 30, be DENIED, and the Commissioner's Motion to Affirm, ECF 32, be GRANTED.

## A. LEGAL STANDARDS

### 1. Disability

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

### 2. Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. § 405(b)(1), in accordance with the five-step sequential evaluation process provided in 20 C.F.R. § 404.1520. The Commissioner's authority to make

these findings and decisions is delegated to an administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929. If a claimant is dissatisfied with the ALJ's decision and the Appeals Council declines review or affirms, *see* 20 C.F.R. § 404.967, the claimant may appeal to the United States District Court. 42 U.S.C. § 405(g).

**3. Court's review on appeal**

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record. *See* 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

**B. BACKGROUND**

Plaintiff applied for Title II disability insurance benefits in August 2021 alleging a disability onset date of June 29, 2021, at which time she was 48 years old. R. 387. She has a significant prior work history as a nurse assistant. R. 460-94. Her impairments include disorders of the skeletal spine; asthma; and adjustment disorder, all of which the ALJ found to be severe. R. 21. Plaintiff's treatment history also mentions other impairments that the ALJ found non-severe, including headache; supraventricular tachycardia; diabetes mellitus; and gastroesophageal reflux disease. *Id.*[1]

[1] Because Plaintiff claims only procedural errors and does not challenge any of the ALJ's factual findings, I have not included a summary of her treatment history or testimony. I assume familiarity with the ALJ's Decision, R. 18-31, and the factual summary in Plaintiff's brief, ECF 30-1 at 5-8, and I refer to the treatment history as relevant in my analysis below.

In August 2022, the ALJ denied Plaintiff's application for disability benefits. R. 209–230. However, the Appeals Council issued a remand order directing the ALJ to give further consideration to Plaintiff's use of a cane. R. 231–36. Additional medical records were submitted thereafter. R. 102–180, 1668–2139.

ALJ Ronald Thomas held another hearing in May 2024, R. 40–67, and issued a second unfavorable decision in September 2024, R. 18–31. He determined that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b)

> except she can perform occasional bending, balancing, twisting, squatting, kneeling, crawling, climbing, but not climbing ropes, scaffolds, and ladders. She must avoid hazards such as heights, vibration, and dangerous machinery, but is okay for personal automobile driving. She must work in an environment free from concentrated poor ventilation, dust, fumes, gases, odors, humidity, wetness, and temperature extremes. She must not use left foot controls. She can have occasional interaction with coworkers, supervisors, and the public. She is capable of simple, routine, repetitious work that does not require teamwork or working closely with the public. She may use a cane to walk and ambulate only.

R. 24. Based on vocational expert testimony, the ALJ concluded that there were jobs that exist in significant numbers that plaintiff can perform, including Office Helper, Inspector/Hand Packager, and Small Product Assembler. He therefore concluded that Plaintiff was not entitled to disability benefits. R. 30–31.

## C. DISCUSSION

Plaintiff alleges two errors: (1) the ALJ failed to adequately develop the record as specifically directed by the Appeals Council; and (2) the RFC determination fails to adequately account for Plaintiff's moderate limitations in concentration, persistence, and pace. *See* Pl. Br., ECF 30-1. I do not recommend remand for the following reasons.

**1. Development of record on remand from Appeals Council**

**a. Development of record re: cane use**

Plaintiff first claims that the ALJ failed to follow the instructions of the Appeals Council on remand and that this resulted in an inadequately developed record. ECF 30-1 at 8–11. The remand order, in relevant part, instructed the ALJ to:

> Obtain additional evidence concerning the claimant's use of a cane for ambulation in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512 and 416.912). The additional evidence may include, if warranted and available, a consultative examination and medical source opinions about what the claimant can still do despite her impairments.

R. 234 (emphasis added). Plaintiff faults the ALJ for not ordering a consultative examination, not obtaining medical source opinions regarding her cane use, and not recontacting treating sources for opinions on cane use. ECF 30-1 at 9–10.

As a threshold matter, the remand order did not mandate that the ALJ obtain a consultative examination or medical source opinions. The regulations provide that on remand "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b) (emphasis added). There is a material distinction between the mandatory "shall" and the permissive "may" in both the remand order and the regulation. For example, the district court in another case found an identical remand order to be "advisory, and not mandatory," granting the ALJ discretion to obtain another consultative examination or additional medical source opinions "in the event she believed it was necessary to further develop the record." *Stephanie M. v. Commissioner of Social Security*, 2022 WL 2733441, at *5 (S.D.N.Y. May 13, 2022). Likewise, the ALJ in the present case had the discretion to decide whether to seek an additional consultative examination or medical source opinions.

That still leaves the question of whether the ALJ adequately developed the record. *See Alicia B. v. Kijakazi*, No. 23-cv-325 (SFR), 2025 WL 2779039, at *4 (D. Conn. Sept. 30, 2025) (recognizing that remand order was permissive but nonetheless finding failure to adequately develop record). It is well established that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (cleaned up); 20 C.F.R. §§ 404.1512(b)(1) (agency must develop "complete medical history" from at least 12 months prior to application). However, an ALJ is not obligated to seek additional information "where there are no obvious gaps in the administrative record." *Rosa* at 79 n.5.

There were no obvious gaps in the record here. Contrary to Plaintiff's contention that there were no medical sources opinions concerning cane use primary care physician Michael Trager, MD, filled out three opinions stating that Plaintiff needed a cane for standing/walking due to imbalance and pain. R. 1765 (Apr. 17, 2022); R. 1744 (Oct. 19, 2022); R. 1750 (Jan. 13, 2023). The ALJ found these opinions "mostly unpersuasive," R. 27–28, which Plaintiff has not challenged. Additionally, the supplemental treatment records submitted post-remand also include numerous mentions of Plaintiff's ambulation and cane use. R. 2396 (Dec. 2022: "normal gait, able to stand without difficulty, ambulates with assistance of cane"); R. 2316 (March 2023: "ambulates w/ cane"); R. 2412 (April 2023: "unstable gait, uses cane"); R. 2424 (July 2023: "uses cane"); R. 2162 (Sept. 2023: "She is able to walk without difficulty she uses a cane at baseline. No weakness in the legs"); R. 2440 (Oct. 2023: "slow gait, able to stand without difficulty, + cane"); R. 2183 (Jan. 2024: no difficulty walking or climbing stairs). Moreover, the ALJ added cane use to the RFC determination, R. 24, and included it in his hypothetical to the

vocational expert, who addressed it in her testimony, R. 61–62. Plaintiff does not identify any gap that a consultative examination or additional medical opinions might have filled, nor do I see an obvious gap. Consequently, remand for further development is not warranted.

**b. Tangential argument re: impact of cane use on lifting/carrying**

In a *non sequitur*, Plaintiff goes on to observe that district courts have found reversible error "where an RFC determination is internally contradictory or fails to adequately explain how a claimant can perform the requirements of a particular exertional level given specific limitations," and cites several decisions that faulted an ALJ for failing to consider how a claimant's cane use would impact the ability to lift and carry. *Id.* However, this observation does not speak to Plaintiff's claim that the ALJ failed to adequately develop the record.

To the extent that Plaintiff is attempting to claim that the ALJ failed to adequately consider cane use in developing Plaintiff's RFC, the argument is not sufficiently developed to warrant review. *See Maria A. v. Comm'r of Soc. Sec.*, No. 3:22-cv-393 (JAM), 2022 WL 17592433, at *5 (D. Conn. Dec. 12, 2022) ("Issues not sufficiently raised in the briefs are forfeited."). Moreover, the vocational expert explicitly considered how cane use might affect Plaintiff's ability to lift and carry when identifying jobs that Plaintiff could still perform. R. 61-62. The VE testified that two of the jobs she identified "could be performed in a seated position at a workbench" and the other job had "no significant lifting included. Items could be carried in the opposite hand." R. 62. For these reasons, the argument does not warrant remand.

**2. RFC impact of moderate limitation in concentration, persistence, and pace**

Plaintiff's second claim is that the mental limitations in the ALJ's RFC determination do not adequately account for his finding that she has a moderate limitation in concentration, persistence or pace ("CPP"). ECF 30-1 at 11–14. CPP is one of the four "paragraph B" criteria

that an ALJ must assess when evaluating the degree of a mental impairment. As explained in 20 C.F.R. § 404.1520a(c)(4), "[w]hen we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme." Here, the ALJ found moderate limitations in CPP and understanding, along with mild limitations in social interaction and self-management, and. R. 23.

Plaintiff contends that the ALJ should have included a CPP limitation in his hypothetical to the vocation expert. To the extent she is asserting that this omission is categorical error, she is incorrect. The Second Circuit has held that failure to explicitly mention CPP in a hypothetical may be harmless error if, *inter alia*, "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to include only unskilled work." *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (cleaned up). In this case, the ALJ included "simple, routine repetitious, work" in the hypothetical, R. 60, so any failure to explicitly mention CPP was harmless.

Lastly, Plaintiff contends that the RFC determination itself does not fully account for her moderate CPP limitation. The determination states in relevant part: "She can have occasional interaction with coworkers, supervisors, and the public. She is capable of simple, routine, repetitious work that does not require teamwork or working closely with the public." R. 24. But the Second Circuit has held that restricting a claimant to unskilled work may be sufficient to address a CPP limitation if it is consistent with the medical evidence. For example, in *McIntyre*, the Second Circuit declined to remand where "substantial evidence in the record demonstrates that McIntyre can engage in 'simple, routine, low stress tasks,' notwithstanding her physical

limitations and her limitations in concentration, persistence, and pace." *Id.* at 152. In contrast, the Second Circuit remanded in *Nunez v. Comm'r of Soc. Sec.* where the RFC limited the claimant to "a setting that is goal-oriented versus requiring that he maintain a specific pace consistent throughout the day" but failed to account for "the largely unrebutted evidence that [the claimant] will be absent from work and off task to an extent that the vocational expert testified is disabling[.]" 164 F.4th 60, 69–73 (2d Cir. 2025).

Although Plaintiff cites *Nunez* in her brief, ECF 31-1 at 12, her situation is more similar to *McIntyre*. She points to no evidence showing the sort of off-task behavior and absenteeism that were present in *Nunez* and, in fact, the two medical opinions she cites actually undercut her argument that additional RFC restrictions were required to address her CPP limitation. Leina Fruhbauer, APRN completed a checklist opining that Plaintiff was "unlimited or very good" in maintaining attention for two-hour segments or maintaining regular attendance and "limited but satisfactory" in performing at a consistent pace without an unreasonable number and length of rest periods. R. 1756. The same checklist was later completed by clinician Arianna Baldwin, who reached the same conclusions except for opining that Plaintiff's ability to maintain attention for two hours was "limited but satisfactory." R. 2546. Consequently, I conclude pursuant to the holding in *McIntyre* that the limitation to "simple, routine, repetitious work" in the VE hypothetical and the RFC determination was consistent with the medical evidence and adequately addressed Plaintiff's CPP limitation.

## D. CONCLUSION

For the foregoing reasons, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 30, be DENIED, and the Commissioner's Motion to Affirm, ECF 32,

be GRANTED.

Any party may seek the district court's review of this recommended ruling. *See* Fed. R. Civ. P. 72(b)(2) (written objections to proposed findings and recommendations must be filed objections to recommended ruling due fourteen days after being served). Failure to file timely objections will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 and 6(a); D. Conn. L. Civ. R. 72.2; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir. 1995).

SO ORDERED, this 29th day of July, 2026, at Bridgeport, Connecticut.

*<u>/s/ S. Dave Vatti</u>*
S. DAVE VATTI
United States Magistrate Judge